IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-20241

Summary Calendar

_____

JUDY GOODWELL

                                   Plaintiff - Appellant

     v.

WAYNE SCOTT, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION

                                   Defendant - Appellee

_____

Appeal from the United States District Court
for the Southern District of Texas
No. H-99-CV-4232
_____

September 28, 2001

Before KING, Chief Judge, and JOLLY and DeMOSS, Circuit Judges.

PER CURIAM:[*]

     Plaintiff-Appellant Judy Goodwell appeals from the district

court's grant of summary judgment on her race discrimination and

retaliation claims in favor of Defendant-Appellee Wayne Scott,

_____

     [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

Director, Texas Department of Criminal Justice. For all the foregoing reasons, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL HISTORY

On July 2, 1999, Plaintiff-Appellant Judy Goodwell, an African-American female, filed a complaint against Defendant-Appellee Wayne Scott, in his official capacity as Executive Director of the Texas Department of Criminal Justice (the "TDCJ"), alleging that she had been denied a promotion because of her race and retaliated against because of her previous complaints about the TDCJ's discriminatory treatment of African Americans, both in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. On July 29, 1999, Scott filed a motion to transfer the case from the Eastern District of Texas to the Southern District of Texas, which was granted by the district court on October 12, 1999. According to the Docket Control Order issued by the district court, discovery was to be completed by August 30, 2000, and all dispositive and non-dispositive motions (except motions in limine) were to be filed by October 16, 2000.

On October 16, 2000, Scott filed a motion for summary judgment. Regarding the failure-to-promote claim, Scott offered, a nondiscriminatory reason for having hired a white female, Glenda Baskin, rather than Goodwell, for the contested position of Program Administrator I. According to Scott, Claude Williams,

2

who made the promotion decision, believed Baskin to be the better candidate. Scott also asserted that he was entitled to summary judgment on Goodwell's retaliation claim because she had not suffered an adverse employment action.

On October 25, 2000, in response to Scott's summary judgment motion, Goodwell filed a motion for continuance pursuant to Federal Rule of Civil Procedure 56(f)("Rule 56(f)"). Goodwell stated that she wished for a continuance in light of recent information she had received from Elizabeth Mullins, a TDCJ Multi-Regional Administrator. Goodwell alleged that according to Mullins, Williams had been very angry over the promotion of Goodwell's spouse, Grover Goodwell ("Grover"), after Grover's successful settlement of a Title VII suit between Grover and the TDCJ. Goodwell asserted that this information was in direct contrast to Williams's deposition testimony that Williams was not angry over Grover's promotion and never had a conversation with Mullins expressing such anger. Additionally, Goodwell stated that Mullins could provide testimony regarding Baskin's lack of qualifications for and subsequent transfer from the contested position. Thus, Goodwell contended that Mullins's statements were evidence of Williams's mendacity and would create a fact issue as to whether Scott's asserted reason for failing to promote Goodwell was pretextual and whether a retaliatory motive had been present.

Specifically, in Goodwell's affidavit, attached as support for the motion for continuance, Goodwell stated that during a recent conversations with Mullins,

> [Mullins] reiterated that Mr. Williams was upset when my husband received a promotion shortly after settling his Title VII case with TDCJ. Also as a long term employee of TDCJ IAD, Ms. Mullins has first hand knowledge of Ms. Glenda Baskin's incompetence and lack of qualifications for the supervisory position of Program Administrator at issue in this lawsuit as well as my experience and qualifications for that position.

As to why the continuance was needed, Goodwell stated in her affidavit that "Ms. Mullins told me that she could not voluntarily submit an affidavit because it may conflict with TDCJ's procedures and she would be required to get permission from TDCJ's Legal Department. However, she told me she would testify if she was either subpoened [sic] or received a deposition notice."

The magistrate judge denied the motion for continuance, holding that Goodwell had made an insufficient showing that a continuance was needed to depose Mullins prior to the deadline for responding to the summary judgment motion. The magistrate judge stated:

> While Plaintiff claims that she has just discovered information from 'Elizabeth Mullins', a Multi Regional Administrator, which is probative of the 'pretext' issue, Plaintiff has not shown that she is unable to file a response to Defendant's Motion for Summary Judgment without further discovery, including a deposition of Ms. Mullins. Similarly, Plaintiff has made no showing that Ms. Mullins would not attest to the information she provided Plaintiff on the pretext issue in an affidavit, which could be attached to

4

Plaintiff's response to Defendant's Motion for Summary Judgment.

Goodwell appealed the magistrate judge's denial of the motion for continuance on December 11, 2000.

On January 5, 2001, the district court affirmed the findings of the magistrate judge with regard to the denial of the motion for continuance, holding that the magistrate judge's findings were not clearly erroneous or contrary to law. The district court also granted summary judgment in favor of Scott on Goodwell's retaliation claim, agreeing with Scott that Goodwell had not presented any evidence that her employer had taken an adverse employment action against her. However, the district court denied summary judgment on the failure-to-promote claim. The district court noted that Scott's only legal argument on that claim was that Goodwell had failed to establish a prima facie case of race discrimination because she had not shown she was clearly better qualified than the hired applicant. The district court found that summary judgment was inappropriate because, under established precedent, Goodwell was not required to show that she was clearly better qualified for the position to establish a prima facie case.

Both Goodwell and Scott filed requests for reconsideration of the district court's order. Goodwell filed a request for reconsideration of the district court's grant of summary judgment on the retaliation claim, arguing that she had been retaliated

5

against by having her job duties stripped away. By contrast, Scott filed a request for reconsideration of the denial of summary judgment on the failure-to-promote claim, arguing that he was entitled to summary judgment because Goodwell had presented no evidence to refute his asserted nondiscriminatory reason for failing to promote her.[2]

On January 29, 2001, the district court granted summary judgment to Scott on Goodwell's failure-to-promote claim. The district court reviewed the evidence and held that there was no basis in the record from which a reasonable factfinder could conclude that the proffered nondiscriminatory reason was false.

Goodwell timely appeals the denial of her motion for continuance and the district court's grant of summary judgment in favor of Scott.

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING GOODWELL'S MOTION FOR CONTINUANCE

---

[2] In its denial of the motion for summary judgment, the district court stated that Scott had implicitly disclaimed that he was defending his action on race-neutral grounds because, in his response to Goodwell's motion for a continuance, he asserted that the continuance for discovery related to pretext was unnecessary until the defendant offered a race-neutral reason for the promotion decision. In his motion for reconsideration, Scott stated that in the response to Goodwell's motion for continuance his counsel had inadvertently confused the issue of a plaintiff's prima facie case and a plaintiff's ultimate burden, but that he had not intended to disclaim the argument that he had a race-neutral reason for the promotion decision.

Goodwell argues that because she explained why she was unable to present evidence creating a genuine issue for trial and because she explained how a continuance would enable her to present such evidence, she met both requirements of Federal Rule of Civil Procedure 56(f), and that the district court abused its discretion in denying her motion for continuance. Specifically, Goodwell asserts that she was unable to present this evidence because she did not learn of Mullins's knowledge of the relevant facts until September 15, 2000. Further, Goodwell contends that this evidence of Williams's false testimony creates an issue of material fact because it casts doubt upon the entire content of his deposition testimony, including the alleged nondiscriminatory reason for failing to promote her. Finally, Goodwell insists that the district court's confirmation of the magistrate judge's order denying a continuance is an abuse of discretion because the magistrate judge's asserted rationale——that Goodwell had made no showing that she was unable to include either Mullins's deposition or affidavit with the response to the summary judgment motion——was in direct conflict with Goodwell's affidavit (which stated that Mullins would not voluntarily submit an affidavit, but would testify only if subpoenaed or deposed).

Scott contends that the district court did not abuse its discretion in denying Goodwell's motion for continuance. First, Scott argues that Goodwell had ample time to depose Mullins, who had been listed as a potential witness on Goodwell's initial

7

disclosure list since October 26, 1999, prior to the time of the filing of the summary judgment motion.  Second, Scott argues that Mullins's testimony would not have raised a material issue of fact on either the failure-to-promote or retaliation claims.

Rule 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or <u>may order a continuance</u> to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED. R. CIV. P. 56(f) (emphasis added).  The decision to grant a continuance under Rule 56(f) is in the sound discretion of the district court.  See <u>Saavedra v. Murphy Oil U.S.A., Inc.</u>, 930 F.2d 1104, 1107 (5th Cir. 1991).

The district court's discretion to deny the requested extension is not entirely unfettered. . . . Where the party opposing the summary judgment informs the court that its diligent efforts to obtain evidence from the moving party have been unsuccessful, a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course.  If, however, the nonmoving party has not diligently pursued discovery of that evidence, the court need not accommodate the nonmoving party's belated request.

<u>Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1267 (5th Cir. 1991) (internal quotations and citations omitted).

A district court should examine the totality of the circumstances in determining whether to grant a continuance, "including the amount of time available for preparation, the defendant's role in shortening the time needed, the complexity of

the case, the availability of discovery from the prosecution, the adequacy of the defense actually provided at trial, and the likelihood of prejudice from the denial." United States v. Davis, 61 F.3d 291, 298 (5th Cir. 1995). We review the denial of a continuance for additional discovery for abuse of discretion and will affirm the denial unless it is arbitrary or clearly unreasonable. See Transamerica Ins. Co. v. Avenell, 66 F.3d 715, 721 (5th Cir. 1995).

We do not find that the district court abused its discretion in denying Goodwell's motion for continuance. Goodwell argued in her motion for continuance that the continuance was necessary because Goodwell had only recently learned that Mullins possessed this information and that Mullins would not voluntarily submit an affidavit attesting to Mullins's knowledge. However, this case was filed on July 2, 1999, and Goodwell, in her own Rule 26 disclosures served upon Scott on October 26, 1999, Goodwell informed Scott that Mullins was a potential witness, who might have knowledge of TDCJ's hiring practices and the adverse employment decision at issue. The district court set August 30, 2000, a date both parties agreed to, as the discovery deadline for this case. Yet, knowing that Mullins might have knowledge of relevant evidence and fully informed of the discovery deadlines, Goodwell does not appear to have made any attempt to depose Mullins. Goodwell's own affidavit states that although Mullins

9

would not voluntary submit an affidavit, she would testify if either subpoenaed or deposed.

Additionally, we believe that Goodwell has failed to show that she was severely prejudiced from the denial of the continuance. See United States v. Brown, 699 F.2d 704, 709 (5th Cir. 1983) ("To establish that such an abuse of discretion has occurred, Brown must show that the denial of a continuance seriously prejudiced him."). According to Goodwell, Mullins would have testified that Williams was angry that Grover had been promoted after having settled his Title VII lawsuit. Goodwell alleges that this is contrary to Williams's deposition testimony and that it casts doubt on the entirety of his deposition testimony. However, this alleged discrepancy, even if true, is simply not sufficient on its own to create an issue of material fact to survive summary judgment on the unrelated issue of whether Williams's nondiscriminatory reason for failing to promote Goodwell was pretextual. Similarly, Mullins's testimony as to Baskin's qualifications for the positions and subsequent transfer from the position, based on Baskin's on-the-job performance, does not create an issue of material fact as to Williams's belief that, at the time of the selection process, Baskin was the better candidate.

We find that the district court did not abuse its discretion in denying Goodwell's motion for continuance.

10

## III. THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT
## IN FAVOR OF SCOTT

Goodwell argues that the district court granted summary judgment prematurely, without allowing her the opportunity to raise a genuine fact issue.[3]  Scott argues that by failing to file a response to the summary judgment motion, Goodwell waived her opportunity to raise an issue of material fact.

We review de novo a district court's grant of summary judgment.  See Evans v. City of Bishop, 238 F.3d 586, 588 (5th Cir. 2000).  Summary judgment is appropriate when the record shows "'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000) (quoting Taylor v. Principal Fin. Group, Inc., 93 F.3d 155, 161 (5th Cir. 1996)).  "'If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial.'"  Id. (quoting Taylor, 93 F.3d at 161).  "Conclusory allegations unsupported by specific facts . . . will not prevent an award of summary judgment; the plaintiff [can]not

---

[3]   Goodwell's argument is that summary judgment was inappropriate because she did not have a full opportunity to conduct discovery.  A review of the record, as discussed supra in Part II, indicates that Goodwell did indeed have the opportunity to conduct discovery, but simply did not take advantage of it.

rest on his allegations . . . to get to a jury without any significant probative evidence tending to support the complaint." Giles v. Gen. Elec. Co., 245 F.3d 474, 493 (5th Cir. 2001) (alteration in original) (internal quotations omitted) (quoting Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 713 (5th Cir. 1994)).  "Instead, Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. (internal quotations omitted) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  "[W]e must view all facts in the light most favorable to the nonmovant."  Cardinal Towing & Auto Repair, Inc. v. City of Bedford, Tex., 180 F.3d 686, 690 (5th Cir. 1999).

Claims of racial discrimination supported by circumstantial evidence are analyzed under the framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  "First, the plaintiff must establish a prima facie case of discrimination." See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).  Once the plaintiff satisfies this prima facie burden, the burden shifts to the employer to produce a "legitimate, nondiscriminatory reason for its decision."  Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).  "If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, 'the

12

mandatory inference of discrimination created by the plaintiff's prima facie case drops out of the picture and the factfinder must decide the ultimate question: whether [the] plaintiff has proved [intentional discrimination].'" Evans v. City of Houston, 246 F.3d 344, 350 (5th Cir. 2001) (quoting Russell, 235 F.3d at 222) (alterations in original) (some internal quotations omitted). "In the context of a claim of discrimination, a plaintiff must adduce evidence that the justification was a pretext for racial and age discrimination." Id. at 351. "In making this showing, the plaintiff can rely on evidence that the employer's reasons were a pretext for unlawful discrimination." Russell, 235 F.3d at 222. "However, as the Court stated in Hicks, a showing of pretext does not automatically entitle an employee to a judgment as a matter of law." Id. at 223. While a showing of pretext will more likely than not lead to an inference of discrimination, see id., a showing of pretext by the plaintiff will not always be sufficient to infer discrimination. For example, "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," the employer would still be entitled to summary judgment. See Reeves, 530 U.S. at 148.

a. Goodwell's Discriminatory Failure-to-Promote Claim

We first analyze Goodwell's discriminatory failure-to-promote claim. To establish a prima facie case of discriminatory failure to promote, "a plaintiff must demonstrate that (1) she is a member of a protected class; (2) she sought and was qualified for an available employment position; (3) she was rejected for that position; and (4) the employer continued to seek applicants with the plaintiff's qualifications." Scales v. Slater, 181 F.3d 703, 709 (5th Cir. 1999). For purposes of this appeal, we will assume without deciding that Goodwell has established a prima facie case of employment discrimination.

To satisfy its burden of producing a "legitimate, nondiscriminatory reason for its decision," Russell, 235 F.3d at 222, Scott argues that Williams believed Baskin to be more qualified for the position. Because Scott has met his burden of producing a legitimate nondiscriminatory reason for failing to promote Goodwell, the mandatory inference of discrimination disappears and the question becomes whether Goodwell has provided sufficient summary judgment evidence to create a material question of fact as to whether Scott discriminated against her on the basis of race. See Evans, 246 F.3d at 350. We find that Goodwell has failed to present sufficient evidence to create a jury issue that Scott's asserted reason for failing to promote her to the Process Specialist position was pretextual.

To establish pretext, Goodwell argues that she was clearly better qualified for the position than Baskin. Although

14

discrimination can be inferred from disparities in qualifications, to establish pretext Goodwin must show that "disparities in qualifications [are] of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  Deines v. Tex. Dept. of Protective & Regulatory Servs., 164 F.3d 277, 280-81 (5th Cir. 1999).  The posted job requirements for the position of Program Administrator I stated that the minimum requirements were a college degree,[4] four years full-time experience in public administration or criminal justice, and one year full time experience in the supervision of employees.  Baskin had a college degree; Goodwell relied on her years of work experience to satisfy this requirement.  Baskin had significantly more work experience supervising employees than did Goodwell.  Although Baskin did not have as much experience within the department as Goodwell did, Goodwell does not introduce sufficient evidence to establish an issue of material fact regarding whether no reasonable person could have chosen Baskin for the position over Goodwell.

Because Goodwell has presented no evidence to rebut Scott's asserted nondiscriminatory reason for the failure to promote

_____

[4]  If the applicant had no college degree, he or she could substitute each year over the four years experience in public administration or criminal justice for thirty semester hours from college.

15

Goodwell, Scott was entitled to summary judgment on the claim of discriminatory failure to promote.

a. Goodwell's Retaliation Claim

We next turn to Goodwell's retaliation claim. "To state a claim for retaliation, a plaintiff must establish that: (1) he engaged in protected activity, as described in Title VII; (2) he suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action." Mota v. Univ. of Tex. Houston Health Science Ctr., No. 00-20009, 2001 WL 897191, at *5 (5th Cir. Aug. 9, 2001). "'Adverse employment actions' include only 'ultimate employment decisions . . . such as hiring, granting leave, discharging, promoting, and compensating.' An employer's action does not rise to the level of an 'adverse employment action' when it fails to have more than 'mere tangential effect on a possible future ultimate employment decision.'" Id. (citations and some internal quotations omitted).

In her deposition testimony, Goodwell stated that the only thing that had changed in her position was the fact that she no longer trains case managers. She has not received a change in title, a pay cut, or any disciplinary action. With the exception of the loss of this one job responsibility, her position is unchanged. That change simply does not rise to the level of an adverse employment action.

16

It is unclear from the record whether Goodwell intended to argue that the "adverse employment action" she suffered was Scott's failure to promote her.  Even if we were to assume that Goodwell intended to argue that Scott had a retaliatory motive in failing to promote her, which would qualify as an adverse employment action, summary judgment remains appropriate for the reasons stated <u>supra</u> in Part II.  Scott has asserted a nondiscriminatory reason for failing to promote Goodwell, and Goodwell has not presented sufficient evidence to create a material issue of fact as to whether that reason is pretext for discrimination.

We find that Scott was entitled to summary judgment on Goodwell's failure to promote and retaliation claims.

17

## IV. CONCLUSION

For all the foregoing reasons, we AFFIRM the judgment of the district court.