# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

———

No. 98-31215

———

## ROBERT D. ALLEN,

Plaintiff-Appellant

VERSUS

## RAPIDES PARISH SCHOOL BOARD

Defendant-Appellee

———

Appeals from the United States District Court
for the Western District of Louisiana

———

March 2, 2000

Before HIGGINBOTHAM and SMITH, Circuit Judges, and FALLON, District Judge.[*]

FALLON, District Judge:

———

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

Robert D. Allen sued the Rapides Parish School Board ("Board") for discrimination under the Americans with Disabilities Act of 1990 ("ADA"). Allen asserts that the Board discriminatorily diminished his position and commensurate salary within the Rapides Parish school district because he suffered from tinnitus, a condition causing him to hear a continuous loud ringing in his ears. The Board contends that it did not

1

discriminate against Allen and afforded him a reasonable accommodation. Because the district court correctly granted summary judgment for the Board, we affirm.

## I.

Allen holds a doctorate in education and has been employed by the Board since 1981. From 1981 to 1988, he held various positions including librarian and teacher. He was promoted to assistant principal at Ball Elementary School ("Ball") in 1988. In 1990, he became the assistant principal/librarian at Ball and agreed to a four-year contract which paid him $42,035 a year.

The Board again promoted Allen in August, 1994 to the position of Coordinator of the Media Center, Testing and Research for which his annual salary increased to $47,825. In conjunction with his new position, Allen signed a new two-year contract. The contract entitled Allen to a position of equal status and pay if he were transferred during the two-year term. If his position were abolished, however, the Board agreed to transfer or reassign him if possible to a position of equal rank.

Soon after Allen began his new job his tinnitus condition worsened. Since 1977, Allen has suffered from tinnitus, a condition causing a constant ringing in the ears which often incites nervousness and agitation. The effects of tinnitus can be mitigated by sufficient ambient noise that masks the ringing sound.

On December 12, 1994, Allen wrote to Superintendent Dr. Betty Cox ("Cox") requesting a transfer to the position of principal at an elementary school. In the letter, Allen explained that "when I am in a quiet building, office, or room, this ringing makes me very uncomfortable and nervous. . . However, when I am in a school setting, the normal noise levels in the school . . . muffles this tinnitus." Appellee's Ex. D. Allen's doctors also submitted letters supporting a change in Allen's environment to provide more background noise.

Cox responded to Allen's concerns by giving him the choices of (1) closing his door and playing music, (2) moving his office to an area close to where videos are recorded, and (3) putting a television in his office. Allen dismissed each of these suggestions.

From February 20, 1995 to June 30, 1995, Allen took sick leave from his position as coordinator because he claimed his tinnitus was aggravated and he was close to suffering a nervous breakdown. His doctors sent additional letters during this time to Cox requesting a "lateral transfer to an environment in which a significant amount of noise exists." Pl.'s Opp. Ex. F. Allen sought additional sick leave from July 1, 1995 until he could be "transferred to an administrative position in a school setting." Def.'s Ex. C. Cox instead granted Allen sabbatical leave from August 17, 1995 to May 31, 1996.

During Allen's sabbatical leave, the Board eliminated several positions including Allen's job as media center coordinator because of significant budget cuts. The Board notified Allen and instructed him to contact the director of personnel to determine his new job for the coming school year. When his sabbatical concluded in August, 1996, Allen became the librarian at Tioga High School.

In February 1997, Allen again complained that his new position failed to produce enough background noise to mitigate the symptoms of his tinnitus. He sought another transfer in August, 1997 and ultimately accepted the librarian position at Horseshoe Elementary School. This

position, however, resulted in a decrease in his yearly salary to $37,956.

Allen admits that his current position at Horseshoe Elementary School satisfies the needs of his tinnitus. Because an elementary school library holds more classes and programs than a high school library, Allen finds his new environment noisier and more accommodating. Allen now also has hearing aids which alleviate the problems of his tinnitus condition.

Nevertheless, Allen argues that the Board denied him promotions and refused his transfer requests to various administrative positions because he suffered from tinnitus.[1] The Board insists that it made reasonable accommodations for Allen and did not hire him as a principal or an assistant principal because he failed to test high enough in the screening process.

The district court assumed that tinnitus was a disability and that Allen was a qualified individual under the ADA, but it granted the Board's motion for summary judgment because it found that the Board had provided Allen with a reasonable accommodation.

The district court also agreed with the Board that the position of assistant principal/librarian did not qualify as a "teacher" under Louisiana's Teacher Tenure Law as Allen contends. Therefore, the court held that Allen could not attain tenure in that position as a matter of law and granted summary judgment for the Board.

## II.

We review *de novo* the grant of summary judgment by a district court and apply in our review the same standard used by the district court. *See Taylor v. Principal Fin. Group, Inc.* 93 F.3d 155, 161 (5th Cir. 1996). Summary judgment is appropriate when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*; Fed. R. Civ. P. 56(c). According to this standard, we "review the facts drawing all inferences most favorable to the party opposing the motion." *Taylor*, 93 F.3d at 161. "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Id.* (quoting *Engstrom v. First Nat'l Bank*, 47 F.3d 1459, 1462 (5th Cir. 1995).

### A.

The ADA prohibits employment discrimination against persons with a disability. It provides that:

> (n)o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of

---

[1] Allen accepted his current position after the Board denied his application for nine different principal positions and four times for the assistant principal position at Tioga Elementary School. According to a 1994 court order, the Board must use a screening committee to nominate candidates for principal and assistant principal positions. Although a screening committee recommended Allen for the latter position, Cox did not support the recommendation because she felt that Allen was neither qualified nor appropriate for the position. She felt that Allen was unqualified because he broke down and cried several times in her office and felt that it was not appropriate for him to hold a supervisory position at a school where his wife worked.

3

employees, employee compensation, job training, and other terms and conditions, and privileges of employment.

42 U.S.C. § 12112(a).

The ADA defines "disability" in pertinent part as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Id.* § 12102(2)(a).

"Discrimination" under the statute includes:

not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

*Id.* § 12112(b)(5)(A).

A "qualified individual with a disability means an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

A "reasonable accommodation" may include:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification or equipment or devices, appropriate adjustment or modification of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

*Id.* § 12111(9).

B.

Allen argues that the Board denied him a reasonable accommodation by not transferring him to any vacant principal or vice-principal positions. In support of this contention, Allen accuses the Board of circumventing the interactive process required to find him a reasonable accommodation.[2] Specifically, Allen points to the fact that Cox took almost six months to complete even an "extremely superficial examination of the issue [his tinnitus]," and that she then offered him three insufficient accommodations – the use of a radio, television, or an another office closer to audio-visual equipment.

Allen does demonstrate a breakdown in

_____

[2] To support his argument, Allen cites the interpretive regulations of the ADA that provide:

To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o)(3). *See also Taylor*, 93 F.3d at 163-64; *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996).

the interactive process. He satisfies the notice requirements of *Taylor* and *Beck* by showing that the Board knew of his limitations. *Taylor*, 93 F.3d at 163; *Beck*, 75 F.3d at 1137. Allen and his doctors sent numerous unanswered letters to Cox concerning the existence, the effects, and the possible mitigation of his tinnitus. These communications are the type of information contemplated by the regulations and eventually prompted Allen's transfer to the librarian position at Horseshoe Elementary School. Therefore, Allen does raise an issue of material fact as to whether he satisfied the requirements of *Taylor* and *Beck* for an interactive process especially when construing the fact inferences in favor of Allen. But this alone is not sufficient to establish an ADA claim.

While Allen may establish that he made the Board aware of his condition and that he did not receive the transfer he sought, Allen fails to demonstrate that the transfers he did receive were not reasonable accommodations. The record reveals that Allen was given four months of paid sick leave, over nine months of paid sabbatical leave, numerous other options to aid in creating background noise to mask his tinnitus, a new position as a librarian at a high school, and at his request, a transfer to the position of librarian at an elementary school. Indeed, he concedes that his current position as librarian at Horshoe Elementary offers sufficient ambient noise and thus reasonably accommodates him.

The gist of Allen's complaint is that he was not transferred to a principal or vice principal position. This is not sufficient to establish a claim for discrimination. The ADA does not require an employer to give an employee with a disability his job of choice especially when there are qualified individuals who desire the same position. *See Milton v. Scrivner*, 53 F.3d 1118, 1125 (10th Cir. 1995) (holding that the ADA does not require employers to promote employees in order to reasonably accommodate them).

Allen neither alleges a claim nor advances evidence to create a genuine issue of fact that the Board decisions to transfer him to librarian positions were discriminatory. Allen also presents no evidence to show that the Board's decision not to offer him a position as principal or assistant principal were motivated by discrimination because of his disability.

At most, Allen claims that the Board acted unreasonably when transferring him to a position paying approximately $4,100 a year less than his previous salary as assistant principal/librarian. He asserts that no demotion and diminution of pay were necessary because his graduate education and administrative experience qualify him for a position as principal or vice-principal.

Even if we accept these allegations as true, Allen only establishes that the Board could have made other reasonable accommodations for him. Allen fails to show that the decisions made by the Board were discriminatory. Even if his reassignment to the library was unfair, this is not enough. The ADA gives Allen a claim only for discriminatory action and not for unfair treatment. *See Armstrong v. Turner Industries, Inc.*, 141 F.3d 554, 560 n.16 (5th Cir. 1998) (noting that the ADA protects employees from unlawfully motivated and not erroneous or arbitrary personnel decisions); *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir. 1995) (stating that the ADA "prohibits employment discrimination against qualified individuals with disabilities, no more and no less"). Without evidence to demonstrate that the Board discriminated

against Allen by denying his transfer requests on the basis of his disability, Allen fails to satisfy his burden to overcome summary judgment. *See Burch v. City of Nacogdoches*, 174 F.3d 615, 622-23 (5th Cir. 1999) (finding that the plaintiff has the burden of showing "that he was denied the job because of his disability").[3]

Because Allen fails to offer any evidence that creates a genuine issue of material fact as to whether the Board reasonably accommodated or discriminated against him

---

[3] Allen need not show direct evidence of discrimination. In *Daigle v. Liberty Life Ins. Co.*, we noted an alternative means of proving an ADA claim:

> Alternatively, the indirect method of proof set for Title VII actions in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), may also be utilized. Under the *McDonnell Douglas* analysis, a plaintiff must first make out a *prima facie* case of discrimination by showing that: (1) he or she suffers from a disability; (2) he or she is qualified for the job; (3) he or she was subject to an adverse employment action; and (4) he or she was replaced by a non-disabled person or was treated less favorably than non-disabled employees.

70 F.3d 394, 396 (5th Cir. 1995) (internal citations omitted). Even if Allen satisfies the first three criteria, he makes no showing as to the fourth. Thus, Allen also fails to meet the burden for establishing an indirect claim of discrimination.

on the basis of his disability, we affirm the district court's granting of summary judgment for the Board on the disability claims.[4]

## C.

In addition to his ADA claim, Allen assets a claim under the Louisiana Teacher Tenure Law ("TTL"). *See* La. Rev. Stat. Ann. § 17:441, *et seq.* He argues that the district court incorrectly granted summary judgment for the Board on his TTL claim because a genuine issue of material fact exists as to whether the position of assistant principal/librarian classifies as a teaching position under the TTL. If so, then Allen insists that he was tenured as an assistant principal/librarian and should have returned to that or a comparable position after his sabbatical.

The Board responds that an administrative position such as assistant principal/librarian could never constitute a teaching position under the TTL. Instead, Allen was tenured as a librarian and returned to that position following his leave.

Section 441 defines a "teacher" as "any employee of any parish or city school board who holds a teacher's certificate and whose legal employment requires such teacher's certificate." *Id.* The parties do not contest that Allen is a tenured librarian and thus a teacher under the law. What they dispute is whether Allen is tenured in the position of assistant principal/librarian.

---

[4] Allen also argues on appeal that he suffers from a "disability" as defined under the ADA and that he is a "qualified individual" within the meaning of the ADA. We need not reach either of these issues because of our ruling on the issue of Allen's reasonable accommodation.

Section 444(B) explains that whenever a teacher, such as Allen, has acquired permanent status and is promoted from a lower to a higher salaried position, "such teacher shall not gain permanent status in the position to which he is promoted, but shall retain permanent status acquired as a teacher." *Id*. § 444(B)(1). Tenure is only available for positions higher than teacher that were attained before July 1, 1985. *See id.* § 17:444(A)(4). Because Allen did not receive his promotion until 1990, he cannot be tenured in the higher position of assistant principal/librarian.

This conclusion is further supported by section 444(B)(3) which contemplates promotions to non-teaching positions. According to this section, "such a person shall, however, automatically acquire permanent status in the position of teacher . . . provided the person is qualified to teach." *Id.* Allen's contention undermines the textual integrity of the TTL by rendering the provisions of § 444 meaningless. *See United States v. Gobert*, 139 F.3d 436, 440 (citing "our duty to give effect to every clause and word of a statute").

Therefore, the district court also correctly granted summary judgment for the Board on Allen's TTL claim.

AFFIRMED.

7