James DAVIS, Petitioner,

v.

Robert JOHNSON, et al., Respondents.

No. 1:02CV83–M–D.

United States District Court,
N.D. Mississippi,
Eastern Division.

June 20, 2002.

James NMI Davis, Parchman, MS, petitioner pro se.

Jo Anne McFarland McLeod, Mississippi Attorney General's Office, Jackson, MS, for Robert NMI Johnson, respondent.

Jo Anne McFarland McLeod, (see above), for The Mississippi Parole Board, respondent.

Jo Anne McFarland McLeod, (see above), for The Attorney General of the State of Mississippi, respondent.

## MEMORANDUM OPINION

MILLS, District Judge.

This matter comes before the court on the Magistrate Judge's Report and Recommendation that the court grant the respondents' motion to dismiss the instant petition for a writ of *habeas corpus* filed under 28 U.S.C. § 2254 for failure to state a claim upon which relief may be granted under FED.R.CIV.P. 12(b)(6). The court agrees with the Magistrate Judge that the motion should be granted; however, the court relies on different reasoning and authority and therefore declines to adopt the Report and Recommendation. The court treats the motion to dismiss as a motion for summary judgment, as the respondents have presented evidence outside the pleadings with the motion. FED.R.CIV.P. 12(b)(6). The *pro se* petitioner has responded to the motion, and the matter is now ripe for review.

### Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners,* 204 F.3d 629, 633 (5th Cir.2000) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988)). After

a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Beck,* 204 F.3d at 633; *Allen v. Rapides Parish School Bd.,* 204 F.3d 619, 621 (5th Cir.2000); *Ragas v. Tennessee Gas Pipeline Company,* 136 F.3d 455, 458 (5th Cir.1998). Substantive law determines what is material. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.,* at 248, 106 S.Ct. 2505. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Federal Savings and Loan, Inc. v. Kralj,* 968 F.2d 500, 503 (5th Cir.1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen,* 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.,* 177 F.3d 351, 361 (5th Cir.1999); *Banc One Capital Partners Corp. v. Kneipper,* 67 F.3d 1187, 1198 (5th Cir.1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994); *see Edwards v. Your Credit, Inc.,* 148 F.3d 427, 432 (5th Cir.1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the neces-

sary facts." *Little,* 37 F.3d at 1075 (emphasis omitted).

## Undisputed Facts

The facts in this case are not in dispute. The petitioner James Davis beat his girlfriend to death with a steel pipe; he struck her head with the pipe repeatedly and with such force that the pipe actually passed through her head and left a crease in the ground below. Davis was convicted of murder in Lowndes County Circuit Court on November 27, 1990 and sentenced to life imprisonment. On July 25, 2000, the State of Mississippi Parole Board ("the Board") convened and began having hearings; on July 26, 2000 the Board granted the petitioner parole to Alabama pending compact agreement. The Board, as required by statute, had notified, among others, the victim's next of kin, the district attorney, the sheriff and the district judge in the county of conviction. MISS.CODE ANN. § 47-7-17, § 47-5-177. The district attorney responded to the notice by sending an objection to the parole board opposing the petitioner's parole based upon "the animal ferocity that define[s] this crime," and included three photographs of the victim's body after the attack and another of the deep crease the steel pipe left upon impacting the ground after passing through the victim's head. The Board had not received the district attorney's response at the time of the parole hearing. The Board then acknowledged that it had granted parole based upon incomplete information and on September 18, 2000, rescinded its grant of parole, setting the date for its next consideration of the petitioner's parole eligibility for July 16, 2001.[1] On that date the parole board again considered the petitioner's parole eligibility, determining that he should be next considered for parole in May, 2006, a setoff of five years, because the Board felt that they "would not be able to parole this offender during their term in office." Aggrieved, the petitioner challenged the rescission of parole in the state trial court and the Mississippi Supreme Court[2], but was not afforded relief. On March 4, 2002, James Davis filed the instant petition for a writ of *habeas corpus,* challenging the Mississippi Parole Board's decision to rescind its grant of parole.

## Rescission of Parole

 The petitioner challenges the *rescission* of his parole *without a hearing* after the Board had initially granted parole. In essence, the petitioner claims that he was entitled to due process protection (notice and an opportunity to be heard) prior to the Board's summary reversal of its earlier decision. As will be discussed below, a state prisoner is not entitled to any due process protection regarding the rescission of an initial grant of parole; therefore, the instant petition for a writ of *habeas corpus* should be dismissed with prejudice.

 The action this petitioner challenges must be clearly defined in order to properly frame a discussion of its propriety, as different rules apply to the various actions a parole board may take. The actions of a given parole board fall on a continuum of degrees of liberty at stake against a backdrop of the type of parole statute adopted by the state of incarceration. In Mississippi, the parole statute

---

1. Davis was never released on parole.

2. The trial court informed the petitioner that the Mississippi Parole Board decision should be appealed to the Mississippi Department of Corrections. Rather than appeal this decision, the petitioner presented his request for relief from the denial of parole directly to the Mississippi Supreme Court, which denied the request because it was not an appeal from a lower court.

*does not* create a liberty interest giving rise to due process protection because the parole board has total discretion to grant or deny parole. *Irving v. Thigpen,* 732 F.2d 1215, 1217–18 (5th Cir.1984). Thus, a Mississippi state prisoner is not entitled to a hearing to determine whether the Board will grant parole. *Id.* Against this backdrop, the actions of the Board form a continuum of increasing liberty interests. First, a prisoner who may be eligible for parole, but who has not yet received it, holds the smallest liberty interest, "no more substantial than the inmate's hope ... a hope which is not protected by due process." *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 9, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979). Second, a prisoner who has been granted parole, but who has not yet been released (such as the petitioner in the instant case), holds a slightly more substantial liberty interest. In that case, the prisoner clearly has more than mere hope of parole; he has a parole board decision to release him; release on parole is far more certain after such a decision. However, despite the expectation of freedom inherent in the parole board's decision to release, such an expectation does not give rise to a liberty interest protected by due process. *Jago v. Van Curen,* 454 U.S. 14, 20–21, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981). Finally, a prisoner who has been granted parole and is currently living in the community has a liberty interest protected by due process, although not the full panoply of protections enjoyed by free citizens. *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).

Under a statutory scheme like Mississippi's, giving the parole board wide discretion in *granting* parole, the prisoner has no liberty interest at stake in a possible grant of parole, and due process requirements do not apply. *Irving* 732 F.2d at 1217–18 (5th Cir.1984). On the other hand, once parole has been granted and the parolee has been released, "there is a human difference between losing what one has and not getting what one wants;" this difference gives rise to a liberty interest worthy of due process protection.[3] The instant case, where the Board has granted parole, but rescinds parole prior to the prisoner's release, falls between these extremes.

A significant distinction exists between parole *revocation* and parole *rescission.*
> The former generally arises out of allegations that, after having properly been granted parole, the parolee committed some act or engaged in some conduct which violated the conditions of his parole. Thus in a *revocation* proceeding, the authorities attempt to take from the parolee the freedom to which, at one time, he was legitimately entitled. However, because *rescission* cases generally involve a parole granted erroneously, as through miscalculation of time, the parolee's expectation of continued freedom rests solely upon the hope that the error will not be discovered.

*Tremarco v. New York State Bd. of Parole,* 87 A.D.2d 114, 118–119, 450 N.Y.S.2d 544 (1982) (internal citations omitted). Thus, the Supreme Court has ruled that parolees who have not yet been released do not have the right to a hearing on the *rescission* of parole. *Jago v. Van Curen,* 454 U.S. 14, 20–21, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981). This rule applies to the present case; the petitioner James Davis was granted parole, but before he was released

---

**3.** *Greenholtz,* 442 U.S. at 9, 99 S.Ct. at 2105, citing Friendly, "Some Kind of Hearing," 123 U.Pa.L.Rev. 1267, 1296 (1975).

on parole, the prosecuting attorney provided the Board with photographic evidence of the ferocious nature of James Davis's crime. After looking at the petitioner's file, along with the new evidence, the parole board reconsidered its decision and rescinded the petitioner's parole before he was ever released. Based upon the Supreme Court's decision in *Jago, supra,* the petitioner was not entitled to a hearing, and the instant petition for a writ of *habeas corpus* should be dismissed with prejudice. A final judgment consistent with this memorandum opinion will issue.