State of TEXAS, Plaintiff,

v.

UNITED STATES of America, United States Department of the Interior, and Gale A. Norton in Her Official Capacity as Secretary of the Department of the Interior, Defendants,

v.

Kickapoo Traditional Tribe Of Texas, Defendant–Intervenor.

No. A–04–CA–143–LY.

United States District Court,
W.D. Texas,
Austin Division.

Aug. 18, 2004.

William T. Deane, Office of the Attorney General, General Litigation Division–019, Austin, TX, for State of Texas, plaintiff.

John F. Paniszczyn, U.S. Attorney's Office, San Antonio, TX, Pilar M. Thomas, Department of Justice, Environment and Natural, Resources Div., Indian Resources Section, Bridget Garcia, Office of the Solicitor, Division of Indian Affairs, U.S. Dept. of the Interior, Washington, DC, Gaines West, West, Webb, Allbritton, Gentry & Rife, PC, College Station, TX, Gloria Hernandez, Kickapoo Traditional Tribe of Texas, General Counsel, Eagle Pass, TX, Jennifer P. Hughes, M. Frances Ayer, Joseph H. Webster, Hobbs, Straus, Dean & Walker, LLP, Washington, DC, Edmund Clay Goodman, Hobbs, Straus, Dean and Walk-

er, LLP, Portland, OR, for United States of America, United States Department of the Interior, Gale A. Norton, in her Official Capacity as Secretary of the Department of the Interior, Kickapoo Traditional Tribe of Texas, defendants.

### MEMORANDUM OPINION AND ORDER ON MOTIONS AND CROSS-MOTION

YEAKEL, District Judge.

Before the Court are Plaintiff's Motion for Summary Judgment filed July 14, 2004 (Doc. # 46); United States Motion for Judgment on the Pleadings or in the Alternative Cross-Motion for Summary Judgment filed August 18, 2004 (Doc. # 48); Defendant–Intervenor's Response in Opposition to Plaintiff's Motion for Summary Judgment filed August 18, 2004 (Doc. # 49); Defendant–Intervenor's Motion to Dismiss, or in the Alternative for Summary Judgment filed August 18, 2004 (Doc. # 50); Plaintiff's Response to the United States' Motion for Judgment on the Pleadings and Defendant–Intervenor's Motion to Dismiss filed August 27, 2004 (Doc. # 53); Plaintiff's Response to the United States Defendants' and Defendant–Intervenor's Motions for Summary Judgment filed August 27, 2004 (Doc. # 54); Defendant–Intervenor's Reply to Plaintiff's Response to Defendant–Intervenor's Motion to Dismiss and Motion for Summary Judgment filed September 7, 2004 (Doc. # 55); and United States' Combined Reply to Plaintiff's Response to United States Motion for Judgment on the Pleadings and Plaintiff's Response to United States Defendants' and Defendant–Intervenor's Motions for Summary Judgment filed September 7, 2004 (Doc. # 57). A hearing was held on the above-listed motions on October 26, 2004, at which the Court heard the arguments of counsel on all motions. After the hearing the parties filed with the Court the following additional documents: Plaintiff's Letter Brief filed November 5, 2004 (Doc. # 64); Defendant–Intervenor's Letter Brief filed November 9, 2004 (Doc. # 65); Defendant United States' Supplemental Brief filed November 12, 2004 (Doc. # 66); Defendant–Intervenor's Submission of Recently Decided Supplemental Authority filed December 1, 2004 (Doc. # 67); Plaintiff's Second Letter Brief filed December 6, 2004 (Doc. # 68); and Defendant–Intervenor's Letter Brief in Reply to Plaintiff's Second Letter Brief filed December 27, 2004 (Doc. # 71). Having reviewed the summary-judgment motions, responses, replies, and additional briefing, as well as all summary-judgment evidence submitted by the parties and the arguments of counsel at the hearing, the Court finds that although the State of Texas does have standing generally to bring its cause of action, its specific claims are premature until a final decision is rendered by the Department of the Interior on whether the Kickapoo Traditional Tribe of Texas's application for Class III gaming would be consistent with Texas law and public policy.

### I. Background

The following factual summary was provided in part by the parties' Joint Stipulations of Fact (Doc. # 47) filed July 14, 2004. The Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–21 (2001), was enacted on October 17, 1988. By adopting IGRA, Congress preempted all other regulation of Indian gaming. See 25 U.S.C. § 2702(3).

IGRA divides Indian gaming into three classes: "Class I games" (social games solely for prizes of minimal value or traditional forms of Indian gaming); "Class II games" (bingo, including pull-tabs, lotto, punch boards, tip jars, instant bingo, other games similar to bingo, and certain card games); and "Class III games" (all other

gaming including roulette, blackjack, and parimutuel wagering). *See id.* § 2703(6)-(8). Class I games are not subject to regulation under IGRA. *Id.* § 2710(a). Class II games are permitted on Indian lands under IGRA if the game is conducted within a state that permits Class II gaming "for any purpose by any person, organization or entity." *Id.* § 2710(b). Class III gaming activities are "lawful on Indian lands only if such activities are ... (A) authorized [by an approved Tribal] ordinance or resolution ..., (B) located in a State that permits such gaming for any purpose by any person, organization, or entity, and (C) conducted in conformance with a Tribal–State compact..." *Id.* § 2710(d) (Supp.2004).

 Known colloquially as a "cooperative federalism" statute, IGRA contemplates joint federal and state regulation. *See Artichoke Joe's California Grand Casino v. Norton,* 353 F.3d 712, 715 (9th Cir.2003). In order to engage in Class III gaming activities, an Indian tribe must "request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal–State compact governing the conduct of gaming activities." 25 U.S.C. § 2710(d)(3)(a). The state must negotiate in good faith with the tribe upon receipt of such a request. *Id.*

The Kickapoo Traditional Tribe of Texas ("Kickapoo Tribe") is an Indian tribe recognized in IGRA "by the Secretary for the special programs and services" and as "possessing powers of self-government." *Id.* § 2703(5). In 1995 representatives of the Kickapoo Tribe met with the Governor of Texas's staff to discuss the possibility of negotiating a compact to conduct Class III gaming in Texas. When the State of Texas rejected the Kickapoo Tribe's offer to

negotiate a compact, the Kickapoo Tribe filed suit on October 13, 1995, alleging that Texas failed to negotiate in good faith under IGRA. Before the lawsuit was concluded, however, the United States Supreme Court decided *Seminole Tribe of Florida v. Florida,* in which the Court held that the enactment of IGRA did not waive a state's Eleventh Amendment immunity. 517 U.S. 44, 72–73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In light of *Seminole Tribe,* Texas's motion to dismiss the Kickapoo Tribe's suit was granted on April 2, 1996. *See* Order on Defendants' Motion to Dismiss, *Kickapoo Traditional Tribe of Texas v. State of Texas,* Cause No. P–95–CA–66 (W.D. TX April 2, 1996).

In May 1996, the United States Department of the Interior (the "Department") published an Advanced Notice of Proposed Rulemaking seeking "comment on its authority under the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2710, to promulgate 'procedures' to authorize Class III gaming on Indian lands when a State raises an Eleventh Amendment defense to an action brought against it pursuant to Section 11 of the Act, 25 U.S.C. § 2710(d)(7)." 61 Fed.Reg. 21394 (May 10, 1996).[1] After the comment period expired, the Department issued a Proposed Rule for Class III Gaming Procedures on January 22, 1998. *See* 63 Fed.Reg. 3289 (Jan. 22, 1998). The Department sought further comment on the Proposed Rule, in response to which Texas submitted its objections. Once appropriations were made available in 1999, the Department was able to publish its Final Rule for Class III Gaming Procedures in April of that year. *See* 64 Fed. Reg. 175353 (Apr. 12, 1999) (codified at 25 C.F.R. Part 291) (the "Gaming Procedures" at issue in this case).

1. In November 1997, Congress adopted an amendment to the 1998 Interior Appropriations bill temporarily prohibiting the Secre-

tary of the Interior from approving a compact that had not been approved by the state. *See* Pub.L. 105–83; § 129 (1998).

On December 11, 2003, the Kickapoo Tribe submitted its Class III gaming application to the Department. On January 12, 2004, the Secretary of the Interior, acting through the Acting Deputy Assistant Secretary of Policy and Economic Development, notified Texas and the Kickapoo Tribe that the Secretary had determined that the Kickapoo Tribe's proposal was complete and met the eligibility requirements of the Gaming Procedures. The Secretary invited Texas to comment on the proposal or to submit an alternative proposal.

On March 11, 2004, Texas filed its original complaint and an Application for Preliminary Injunction and for Stay of Administrative Proceedings seeking to have the Gaming Procedures declared invalid and seeking a stay of the application of those procedures to Texas pending this Court's review. A hearing was held before this Court on April 20, 2004, following which the Court denied Texas's application. Following the ruling, the parties filed the various motions and cross-motions for summary judgment, to dismiss, and for judgment on the pleadings discussed herein.

Texas's motion for summary judgment seeks a finding by the Court that the Gaming Procedures are in direct conflict with IGRA and therefore constitute an unconstitutional delegation of legislative authority to the Secretary and violate the separation-of-powers doctrine. Further, Texas seeks a finding that the Gaming Procedures vest the Secretary with judicial and legislative authority that conflicts with the Secretary's position as "trustee" for the Indian tribes under IGRA. In response, the Kickapoo Tribe asserts that Texas lacks standing to raise its claims and that its claims are not ripe for adjudication.

The United States' motion for judgment on the pleadings and cross-motion for summary judgment also raises the issue of standing because, the United States contends, there are no injuries and no final decision for Texas to challenge. In response, Texas argues that its injury is the loss of its right under IGRA to negotiate in good faith and not be subject to any remedial procedures.

## II. Analysis
### A. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir.2000) (internal quotations and citations omitted). When both parties move for summary judgment, the court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. Ford Motor Co. v. Texas Dept. of Transp., 264 F.3d 493, 498 (5th Cir.2001) (citing Taylor v. Gregg, 36 F.3d 453, 455 (5th Cir.1994)). Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. See Burch v. City of Nacogdoches, 174 F.3d 615, 619 (5th Cir.1999). However, "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden," Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 (5th Cir. 1996), and only disputes over facts that

might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. The Gap Created by Semiole Tribe

■ In 1996 the Supreme Court held that an Indian tribe could not sue a state in federal court for failure to negotiate in good faith if the state asserted its Eleventh Amendment immunity from suit. *Seminole Tribe,* 517 U.S. 44, 76, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). As a result, the federal courts do not have jurisdiction over suits brought by Indian tribes against states under IGRA's cause-of-action provisions [2] if a state raises an Eleventh Amendment immunity defense. *Seminole Tribe* affirmed the Eleventh Circuit's holding that IGRA's provision allowing a tribe to sue an unconsenting state was unconstitutional. *See Seminole Tribe of Florida v. Florida,* 11 F.3d 1016, 1029 (11th Cir. 1994). But the Eleventh Circuit also held that the Indian tribe retained a remedy through the Department's promulgation of procedures governing Class III gaming on tribal lands:

> If the state pleads an Eleventh Amendment defense, the suit is dismissed, and the tribe pursuant to 25 U.S.C. § 2710(d)(7)(B)(vii), then may notify the Secretary of the Interior of the tribe's failure to negotiate a compact with the state. The Secretary may then prescribe regulations governing class III gaming on the tribe's lands. This solution conforms with the IGRA and serves to achieve Congress' goals, as delineated in §§ 2701–02.

*Id.* Thus, the circuit court specifically found that the Class III provisions of

IGRA could stand under a traditional severance analysis, as long as the procedures remedy was made available to the Indian tribe. *Id.*

The Supreme Court did not address the Eleventh Circuit's holding on this point, *see Seminole Tribe,* 517 U.S. at 76 n. 18, 116 S.Ct. 1114, expressly denying certiorari on the request to review that specific part of the circuit court's holding. *See Florida v. Seminole Tribe of Florida,* 517 U.S. 1133, 116 S.Ct. 1416, 134 L.Ed.2d 541 (1996). The circuit court's decision thus opened a gap in the application of IGRA, creating an ambiguity to which the Department responded by promulgating the Gaming Procedures at issue in this case.[3] Because Congress does not speak directly to this issue under IGRA, this Court must determine if, under judicial principles regarding severance, the Secretary's interpretation of her authority to promulgate the Gaming Procedures is reasonable.

When considering the validity of a statute following severance, the Supreme Court has held that the most relevant inquiry is whether, after severance, "the statute will function in a *manner* consistent with the intent of Congress." *Alaska Airlines v. Brock,* 480 U.S. 678, 685, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987). The *Alaska Airlines* court noted that in severing a statute, courts should refrain from invalidating more of the statute than is necessary to ensure that the constitutional problem is avoided. *Id.* at 684, 107 S.Ct. 1476. Applying these principles, the Eleventh Circuit in *Seminole Tribe* determined that although the court was required to sever the application of the judicial-enforcement provisions of IGRA to unconsenting states, the statutory provision au-

---

**2.** 25 U.S.C. §§ 2710(d)(7)(A)(i), (B)(i) (2001)

**3.** The Ninth Circuit has expressly reviewed and affirmed the saving construction in the

Eleventh Circuit's *Seminole Tribe* decision. *See U.S. v. Spokane Tribe,* 139 F.3d 1297, 1301–02 (9th Cir.1998).

thorizing the Secretary to issue procedures remained intact because the requirements for Indian tribes under those provisions were also necessarily severed. *Seminole Tribe*, 11 F.3d at 1029. This Court finds that affirming the Secretary's authority to issue these Gaming Procedures, in light of Texas's assertion of its Eleventh Amendment immunity, is the only means of severing IGRA while still allowing it to operate in a manner consistent with the intent of Congress. *Alaska Airlines*, 480 U.S. at 685, 107 S.Ct. 1476. Congress's intent in enacting IGRA was to develop a regulatory framework that balanced the interest of the states and the tribes. *See* S. REP. N. 100–446, 100th Cong.2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 3071, 376; *Spokane Tribe*, 139 F.3d at 1298–1299. It would appear, therefore, that if the Gaming Procedures could not be applied to an unconsenting state, the outcome would be a state veto over tribal gaming-a result directly at odds with Congress's intent in maintaining a balance of interests.

The United States argues [4] that applying part two of the *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*[5] inquiry, the Secretary reasonably interpreted IGRA to provide a specific grant of authority under the general-authority statutes (25 U.S.C. §§ 2, 9 (2001)) to promulgate the Gaming Procedures meant to fill the gap created by the Supreme Court's decision in *Seminole Tribe*. Texas asserts that no such authority exists to fill the gap created by *Seminole Tribe*, and argues that the promulgation of the Gaming Pro-

cedures constitutes an invalid delegation of legislative authority.[6] This Court disagrees.

Under the two-step inquiry established in *Chevron*, courts must first ask whether Congress has spoken directly to the precise issue. *Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778. In this case, there is no dispute that Congress has not addressed this issue. The second step then requires court to defer to the agency's interpretation if it is reasonable. *Id.* Deference is given where the agency's construction is permissible-the court can reverse "only if the agency's construction is arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 843, 104 S.Ct. 2778 (internal quotations omitted).

Section 9 of the general-authority statutes for the Bureau of Indian Affairs grants authority to the President of the United States to "prescribe such regulations as he may think fit for carrying into effect the various provisions of any act relating to Indian affairs." 25 U.S.C. § 9. Section 2 subdelegates this authority to the Commissioner of Indian Affairs. *Id.* at § 2. These provisions have been upheld by the courts as valid statutory grants of authority to the executive to manage Indian affairs and promulgate regulations. *See Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); *Washington v. Washington State Commercial Passenger Fishing Vessel Assn.*, 443 U.S. 658, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979); *Miami Nation of Indians of Indiana, Inc. v.*

---

**4.** The Kickapoo Tribe incorporates the United States' arguments regarding the Secretary's authority to issue procedures arising from the general-authority statutes. *See* 25 U.S.C. §§ 2, 9 (2001).

**5.** 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

**6.** In addition to challenging the Secretary's authority to issue procedures under IGRA,

Texas also challenges the specific authority granted to the Secretary in those procedures. The Court declines to address this extended argument, however, as the issue before the Court at this time is limited solely to the scope of the Secretary's authority to promulgate procedures, not the application or substance of those procedures.

*United States Dept. of the Interior*, 255 F.3d 342 (7th Cir.2001); *James v. United States Dept. of Health and Human Servs.*, 824 F.2d 1132 (D.C.Cir.1987); *Northern Arapahoe Tribe v. Hodel*, 808 F.2d 741 (10th Cir.1987); *United States v. Eberhardt*, 789 F.2d 1354 (9th Cir.1986).

This Court finds that IGRA vests the Secretary with the authority to promulgate the procedures governing Class III gaming on tribal land in light of her authority and trust responsibility under IGRA. Although Congress did not expressly grant authority to the Secretary to promulgate rules in the wake of the Supreme Court's *Seminole Tribe* decision, that grant of authority may be inferred from both the language in IGRA and the general-authority statutes. This inference is reasonable in light of IGRA's compacting and remedy provisions and the Secretary's general authority to implement regulations for acts related to Indian affairs. Therefore, this Court concludes that IGRA and the general-authority statutes provide the Secretary with the authority to promulgate the Gaming Procedures at issue in this case.

## C. Standing, Good–Faith Negotiations, and Harm

■ Both the United States and the Kickapoo Tribe raise a subject-matter jurisdiction question, arguing that Texas does not have standing to bring suit at this time. The Kickapoo Tribe asserts that Texas has failed to meet the three legal requirements for demonstrating injury in fact because the alleged injury is not "concrete and particularized"; is not "actual and imminent"; and does not involve a "legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Because there has been no final ruling by the Department on the Kickapoo Tribe's gaming application, the Kickapoo Tribe contends, there is no harm. The mere existence of the Gaming Procedures alone

do not create a controversy. The United States further contends that IGRA provides the states with the authority to participate in good faith with Indian tribes in the regulation of gaming, but that if a state decides not to participate or does not participate in good faith, the Indian tribe, through the Department's promulgation of procedures governing Class III gaming on tribal lands, is granted access to a mediation process that, through a series of sequential mechanisms, may ultimately provide for tribal gaming without direct participation of the state.

Texas argues that its injury is the loss of its right under IGRA to negotiate in good faith and not be subject to any remedial procedures promulgated by the Department and not found in IGRA. Relying on *Alaska Dep't of Environmental Conservation v. EPA*, 540 U.S. 461, 483, 124 S.Ct. 983, 157 L.Ed.2d 967 (2004), Texas contends that the Gaming Procedures need not be applied to be subject to judicial review because the "final agency action" is the publishing of the regulations themselves. Texas's position, however, is in direct conflict with federal-court precedent. A pre-application review of a final agency rule is warranted only if the issues are fit for determination and a delay in making such a determination will cause hardship to the challenging party. *See Central & South West Servs., Inc. v. United States, EPA*, 220 F.3d 683, 690 (5th Cir.2000) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). This "ripeness doctrine" was established by the Supreme Court to prevent courts "from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laborato-*

*ries,* 387 U.S. at 148–49, 87 S.Ct. 1507. *See also American Forest & Paper Ass'n. v. EPA,* 137 F.3d 291, 296–297 (5th Cir. 1998) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 833 F.2d 583, 587 (5th Cir.1987) (*"NOPSI"*)). Even where an issue presents a purely legal question, the plaintiff still must show some hardship in order to establish ripeness. *See American Forest,* 137 F.3d at 296; *Chevron,* 987 F.2d at 1153–54; *NOPSI,* 833 F.2d at 588. Although the issues raised by Texas in this case are primarily legal, this Court finds that they are not ripe for judicial review at this time because Texas's claims are contingent upon future events that may or may not occur (*i.e.,* the Secretary's approval of the Kickapoo Tribe's Class III gaming application). Additionally, Texas has offered no evidence that it will suffer hardship if the Court defers consideration of this issue until after the Department's Gaming Procedures have been fully applied and a final determination by the Secretary has been issued. Texas asserts that it has been harmed by the fact that it has been denied the right to be involved in the Secretary's review of the Kickapoo's application pursuant to Department's Gaming Procedures. This Court concludes, however, that Texas has been denied no such right. The Department has invited Texas to participate in informal conferences to discuss the Kickapoo Tribe's application, most recently on December 2, 2004,[7] but Texas steadfastly and repeatedly refused to participate.[8] Therefore, Texas must wait until the Secretary has made a final determination of the Kickapoo Tribe's application to challenge the validity of the Department's Gaming Procedures. Therefore, based on this record, this Court concludes that any hardship Texas could suffer is conjectural and thus, the issue is not ripe for review at this time.

### III. Conclusion

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment filed July 14, 2004 (Doc. # 46) is **DENIED.**

**IT IS FURTHER ORDERED** that United States Motion for Judgment on the Pleadings or in the Alternative Cross–Motion for Summary Judgment filed August 18, 2004 (Doc. # 48) and Defendant–Intervenor's Motion to Dismiss, or in the Alternative for Summary Judgment filed August 18, 2004 (Doc. # 50) are **GRANTED TO THE EXTENT** that they assert that Texas's cause of action is premature. In all other respects, the motions are **DENIED.**

Plaintiff the State of Texas's action is hereby **DISMISSED WITHOUT PREJUDICE** to refile same once the Secretary of the Interior has issued a final decision on the Kickapoo Traditional Tribe of Texas's Class III gaming application.

7. *See* United States' Status Report filed December 14, 2004 (Doc. # 69).

8. The Court notes that the record in this case indicates that Texas does permit some forms of Class III gaming. *See* Exhibit 11 to Joint Stipulations of Fact (Doc. # 47). Several courts have found a lack of good faith where a state categorically refuses to negotiate when the state has otherwise permitted Class III gaming as defined under IGRA. *See Mashantucket Pequot Tribe v. Connecticut,* 913 F.2d 1024, 1032 (2d Cir.1990); *Ysleta Del Sur Pueblo v. Texas,* 852 F.Supp. 587, 596 (W.D.Tex.1993), *rev'd on other grounds,* 36 F.3d 1325 (5th Cir.1994); *Flambeau Band of Lake Superior Chippewa Indians v. Wisconsin,* 770 F.Supp. 480, 482 (W.D.Wis.1991).