# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 12, 2010

No. 09-11222
Summary Calendar

Lyle W. Cayce
Clerk

JOHN W BROOKS,

Plaintiff-Appellant

v.

LUBBOCK COUNTY HOSPITAL DISTRICT, doing business as UMC Health System,

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:08-CV-92

Before HIGGINBOTHAM, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

John W. Brooks claims UMC Health System terminated his employment because of his race and in retaliation for filing various discrimination suits against UMC. The district court granted the UMC's motion for summary judgment and dismissed the suit, finding Brooks failed to make out a prima facie

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-11222

case and that even if he did, Brooks cannot show UMC's rationales were a mere pretext. We agree with the district court and affirm.

I

Brooks, an African American male, was hired by UMC in 1987. Brooks worked under Charlotte Carlson for over thirteen years in the Patient Accounting department and was considered a good employee. However, in 2000, due to corporate restructuring, Brooks began reporting to the Director of Admitting and problems arose. Carlson asked whether Brooks would like to return to Patient Accounting and was transferred that year. There he reported to assistant directors of Patient Accounting, who in turn reported to Carlson. Brooks had few problems until August of 2005, when Carlson had a job performance counseling session with Brooks regarding an inappropriate relationship Brooks had with one of his subordinates.[1] During the first quarter of 2007, after another reorganization, Brooks began to report to Carlson again. Carlson claims that she quickly assessed Brooks's performance as "substandard."

Meanwhile, in 2001, Brooks brought the first of what has now been three separate EEOC discrimination charges against UMC. He subsequently sued in Texas court in 2002, which the court eventually dismissed in 2005. In 2006, shortly after the Supreme Court denied cert in his original claim, Brooks filed a second EEOC charge alleging retaliation for the first suit. He again sued, this

---

[1] One of Brooks's subordinates claimed sexual harassment, however Carlson's review of emails led her to believe it had been a two-way relationship. The subordinate was assigned to another supervisor and Brooks was informed that he would be terminated if he participated in another inappropriate relationship.

No. 09-11222

time in federal court, and the district court dismissed this suit on May 29, 2007. We later dismissed Brooks's appeal for lack of prosecution.[2]

On October 5th, 2007, Carlson had another job performance counseling session with Brooks. Brooks raised a number of issues, including concerns about his failure to keep up with changes in the commercial area, his ability to perform as a supervisor, and failure to determine proper payments. Carlson's report stated that she had engaged in several conversations with Brooks regarding his performance and that he claimed a number of personal issues had been holding him back. She stated that though she had previously given him the benefit of the doubt, he had become more of a detriment to her department than an asset. On October 29th 2007, Carlson received an independent consultants report which revealed Brooks had failed to catch a $400,000 underpayment of one of his accounts. Carlson asked Brooks to resign and he complied.

Brooks now sues UMC for a third time alleging that his termination was the result of race discrimination and retaliation. UMC moved for summary judgment contending Brooks was terminated solely on the basis of his performance. The district court granted the motion and Brooks now appeals.

II

---

[2] *Brooks v. Lubbock County Hosp.*, No. 07-10733 (5th Cir. Sep. 11, 2007) (Order dismissing appeal for failure to file briefs).

3

No. 09-11222

We review the grant of a motion of summary judgment de novo.[3] A grant of summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[4]

We consider claims of intentional discrimination, including both race discrimination and retaliation claims based on Title VII and 42 U.S.C. § 1981 under the same familiar *McDonnell Douglas* analysis.[5] To sustain a claim under this framework, the plaintiff must first establish a prima facie case of discrimination. "To establish a prima facie case of racial discrimination in employment, an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership of the protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."[6] To establish a prima facie case of retaliation the employee must demonstrate: "(1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action."[7] Once a prima facie case has been established the burden of production

---

[3] *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).

[4] *Id.*

[5] *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002); *McDonnell Doughlas Corp., v. Green*, 411 U.S. 792, 802 & n.13 (1973).

[6] Lee v. Kansas City Southern Railway Co., 574 F.3d 253, 259 (5th Cir. 2009); *McDonnell Douglas Corp*, 411 U.S. at 802.

[7] *Raggs*, 278 F.3d at 471; *Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir. 2001).

No. 09-11222

shifts to the employer who must furnish a legitimate nondiscriminatory explanation.[8] If the employer provides such an explanation, the inference of discrimination falls away and the burden shifts back to the employee to demonstrate the explanation is a mere pretext for discrimination or retaliation.[9] We turn first to the claim of race discrimination and then to the retaliation claim.

The district court found Brooks failed to establish the fourth prong of his prima facie case: that he was treated less favorably because he was African American than similarly situated employees of a different race. In support of his prima facie case, Brooks claims two Anglo American employees did not suffer the same disciplinary consequences, job performance counseling and termination, even after they allegedly also lost as much as $600,000.

In order to establish a prima facie case, Brooks must establish that the Anglo American employees were "similarly situated to him." We "require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'"[10] The employee being compared must have "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse

---

[8] *Lee*, 574 F.3d at 259; *Evans*, 246 F.3d at 354-55.

[9] *Lee*, 574 F.3d at 259; *Evans*, 246 F.3d at 354-55.

[10] *Lee*, 574 F.3d at 260.

No. 09-11222

employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions."[11]

To demonstrate Brooks offers a series of emails purporting to show two Anglo American employees also lost significant amounts of money through the mismanagement of accounts. It is difficult from the record to determine what, if anything, the evidence Brooks offers demonstrates. However, even assuming the evidence demonstrates the other employees lost money as well, he has not show the other employees were similarly situated. Brooks makes no showing that he and the other employees had essentially comparable violation histories.[12] When the mismanagement of the account was discovered, Brooks had recently undergone a job performance counseling session in which Carlson detailed a litany of complaints and concerns regarding Brooks's job performance. Carlson's report stated Brooks failed to follow through on instructions, received no respect from the employees he supervised, could not identify problems, failed to determine correct payments, failed to respond to emails such that Carlson had to be cc'ed on all of his emails, and many other problems. Nor was that his first job performance counseling session. Brooks disputes none of this but offers no evidence the other employees' performances were similarly deficient. Brooks cannot establish a prima facie case of race discrimination.

The district court also found Brooks failed to establish a prima facie case of retaliation as he failed to prove that his termination was causally connected to his EEOC complaints and lawsuits. Brooks offers three incidents which he

---

[11] *Id.*

[12] *See Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 515 (5th Cir. 2001) (finding other employees with disciplinary infractions to be sufficiently dissimilar as they had less severe disciplinary histories).

claims supports a finding of a causal connection. He claims another supervisor threatened to terminate him in July of 2006, that on May 17, 2007 Carlson made a direct threat to terminate Brooks for filing the EEOC charges, and that Carlson demanded Brooks apologize to the CFO of UMC and another manager for filing the EEOC charges. Importantly, the comments were made while Brooks's second suit was ongoing and before it was dismissed by the district court. Brooks did not bring any additional claims between when the comments were made and his eventual termination. The causal link between his termination and the EEOC charges and lawsuits is weak at best.

However, even assuming Brooks made out a prima facie case, Brooks does not provide evidence demonstrating UMC's legitimate reason for firing him was merely a pretext. "Our job as a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions."[13] As the district court found, UMC presents a legitimate reason for terminating Brooks, his progressively worsening job performance culminating in his failure to catch a $400,000 underpayment in one of his accounts. Brooks admits the error and does not dispute the other allegations regarding his poor performance. Rather he claims that his performance was due to stressful working conditions caused by Carlson's counseling sessions and emails berating him for mistakes. It is unclear how, even if this is true, it would demonstrate UMC's rationale was pretext as opposed to Brooks's increasing inability to perform his job. Brooks offers no evidence suggesting that the counseling sessions were initiated with unlawful motive as opposed to an honest effort to get Brooks's performance back to the levels it had been previously. Carlson had previously given Brooks good

---

[13] *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

No. 09-11222

reviews—even while his first suit was ongoing[14]—and she claims to have considered Brooks a friend up until his performance began to decline. Nor does Brooks's allegation that Carlson threatened him demonstrate UMC's rationale was a pretext. The comment was made five months before the job performance counseling session and auditor's report. It does not suggest, and Brooks does not claim, that the allegations of poor performance or the report's findings were untrue. As Brooks offers little to no evidence suggesting UMC's claim that it terminated Brooks for performance reasons is false, he cannot demonstrate it was merely a pretext for retaliation.

Brooks has not demonstrated a genuine issue of material fact evidencing unlawful discrimination or retaliation by UMC in it's termination of Brooks. The district court's grant of summary judgment is AFFIRMED.

---

[14] This court has recognized that when the same actor who fired the employee also hired him gives an inference against discrimination. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996). The same logic applies here: Carlson recruited Brooks in 2000 to come back to work for her department and did not find problems until another employee complained of an inappropriate relationship in 2005, even after Brooks's first suit was filed in 2002.