# United States Court of Appeals
## for the Fifth Circuit

_____

No. 24-50024

_____

Teresa Esparza,

*Plaintiff—Appellant*,

*versus*

Advanced Network Management, Incorporated,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:21-CV-199

_____

Before Davis, Higginson, and Douglas, *Circuit Judges*.

Per Curiam:*

This appeal concerns the sufficiency of an employee's summary-judgment proof of discrimination and retaliation under the Texas Commission on Human Rights Act (TCHRA). Because the employee fails to present a genuine issue of material fact that her sex was a motivating factor for her internal transfer or that her charge of discrimination and termination were causally connected, we AFFIRM summary judgment for the employer.

_____

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-50024

## I.

Defendant-Appellee Advanced Network Management, Incorporated (ANM) is an information-technology consulting company. In 2016, ANM hired Plaintiff-Appellant Teresa Esparza to sell Cisco Core products in El Paso, with a $60,000 base salary plus sliding commissions. Before arriving at ANM, Esparza sold audiovisual (A/V) solutions for a Houston-based company.

ANM sets annual quotas for its salesforce, which serve as its measure for employee performance. Esparza did not meet her quotas in 2016 or 2017 and was in the bottom third of sales in 2018, prompting ANM to consider a performance improvement plan (PIP) for her. But Esparza landed a significant A/V deal in 2018, which helped her surpass her quota for that year and bought her some grace. She met 75% of her 2019 quota with sales above $1.2 million.

In the last quarter of 2019, ANM created standalone sales units for its various products—A/V Sales, Cabling, Salesforce, and Cisco Core Sales. Raminder Mann, ANM's chief executive officer, assigned salespeople to the different units with the help of Lee Loen, chief revenue officer, and Casey Duffey, a manager who was to become head of A/V Sales. At the time, A/V products and services totaled 10% of ANM's business but over 50% of Esparza's, a sales mix that differentiated her from other ANM representatives. This, coupled with her prior job, led Mann to assign Esparza to the A/V Sales unit beginning January 1, 2020. Esparza's sales territory remained the El Paso area throughout her time at ANM.

Upon her transfer, ANM lowered Esparza's sales quota, increased her base pay by $5,000, and projected Esparza would earn more commissions than she had selling Cisco Core products. ANM also extended commissions on old business through the first quarter of 2020 for those representatives

2

transferring to new sales units. Esparza was eligible for these "double commissions" but contends they were "minimal" compared to the pipeline of Cisco Core sales she supposedly ceded to her successors.[1]

After the transfer, Esparza performed at the bottom of companywide sales. Her supervisor, Casey Duffey, tried to encourage and coach Esparza but, by late February 2020, Esparza had met just $8,000 of her $275,000 sales quota for the quarter. On February 24, Duffey e-mailed Human Resources Director Meralys Stephens about placing Esparza on a PIP. The next day, Esparza told Duffey she'd retained counsel to sue ANM. Duffey returned to Stephens and decided against the PIP to avoid appearing retaliatory. Esparza filed a charge of discrimination with the Texas Workforce Commission on February 28.

Esparza's sales did not improve, so Duffey implemented the PIP in April 2020. The PIP established monthly sales goals, required "immediate improvement" in work quality and interpersonal relationships, and set a follow-up meeting in sixty days.

Esparza did not progress under the PIP. She met just $4,080 of its $125,000 sales goal for April and $0 of its $133,000 goal for May, leading Duffey to decide to end her employment. Her last day with ANM was July 13, 2020.

Esparza blames "challenges," "stressors," and a manager named Matt Elliott for her poor performance in A/V Sales. Elliott arrived at ANM

---

[1] Aside from her testimony, Esparza offers no evidence of a $10–12 million pipeline of Core sales. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) ("[The nonmovant's] burden [on summary judgment] is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." (internal citations and quotation marks omitted)).

No. 24-50024

in July 2019 and briefly supervised Esparza before her January 2020 transfer. As part of that supervision, Elliott prepared and presented to Esparza a year-end performance evaluation that reads in part, "I challenge you to be very thoughtful in your email writing as there are times where your emotions are very clear in the way the email is written." Esparza contends this exhibits sex-based animus by Elliott.[2]

Esparza also attributes her poor performance to a "customer engagement model," which required non-Core salespeople to involve the Core Sales team when contacting ANM customers with preexisting Core relationships. Aside from Esparza's generalized testimony, there's no evidence the model adversely affected her performance in A/V Sales. Rather, the record reflects Duffey allowed Esparza to disregard the model altogether.

## II.

Esparza sued ANM in July 2021 in Texas state court, asserting TCHRA claims of sex discrimination and retaliation.[3] After removing the case to federal court on diversity grounds, ANM moved for summary judgment.[4] The district court identified two actionable employment decisions—Duffey's April 2020 PIP and Esparza's termination. Construing the law and record broadly in Esparza's favor, it found insufficient proof of

_____

[2] She also suggests without evidence that Elliott interfered with her business relationships.

[3] Tex. Lab. Code Ann. §§ 21.051, 21.055. Esparza's complaint also alleged age discrimination, but she has abandoned that claim on appeal.

[4] Aside from serving as persuasive guidance for Esparza's TCHRA claims, federal civil-rights laws aren't at issue in this case. *Tex. Tech Univ. Health Scis. Ctr.–El Paso v. Flores*, 612 S.W.3d 299, 304 n.1 (Tex. 2020); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex. 2001).

discriminatory or retaliatory intent by ANM and entered summary judgment for the company.[5] After the case was dismissed, this Court decided *Hamilton v. Dallas County*, which overturned circuit precedent requiring an "ultimate" employment decision to state a discrimination claim under federal law.[6] Esparza sought reconsideration in the district court and urged her transfer to A/V Sales as a new ground for her discrimination claim. The district court granted the motion and, again construing the law and record broadly, concluded Esparza's evidence failed to show ANM's stated reason for her transfer to A/V Sales was motivated in part by sex discrimination. This appeal followed.

## III.

Esparza no longer contends the April 2020 PIP was an adverse employment action, which leaves her transfer to A/V Sales as the operative employment decision for her discrimination claim and her dismissal as the basis for her retaliation claim.[7] She relies on the same categories of pretext

---

[5] *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[6] 79 F.4th 494, 502 (5th Cir. 2023) (en banc).

[7] The Texas Supreme Court has not decided whether *Hamilton* and *Muldrow v. City of St. Louis* govern TCHRA claims. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024) (mirroring *Hamilton*'s holding). Texas courts of appeals have not reached consensus, either. *Compare City of Houston v. Wills*, No. 14-23-00178, 2024 WL 3342439, at *5 & n.3 (Tex. App.—Houston [14th Dist.] July 9, 2024, no pet.) (applying *Hamilton* to TCHRA claim given statute's purpose of aligning Texas law with federal law), *with City of Pasadena v. Poulos*, No. 01-22-00676, 2023 WL 7134974, at *10 n.1 (Tex. App.—Houston [1st Dist.] Oct. 31, 2023, no pet.) ("In the absence of contrary authority from the Texas Supreme Court or this Court sitting en banc, we continue to be bound by our prior precedent holding that the TCHRA's anti-discrimination provision only applies to 'ultimate employment decisions.'"). We assume, without deciding, that the Texas Supreme Court would apply *Hamilton* and *Muldrow* to TCHRA claims. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 781 (Tex. 2018) ("In discrimination and retaliation cases under the TCHRA, Texas jurisprudence parallels federal cases construing and applying equivalent federal statutes, like Title VII."); *Specialty Retailers,*

No. 24-50024

evidence she presented on summary judgment and urges a new cat's-paw theory that Elliott influenced Mann's decision to transfer her to A/V Sales. ANM responds that Esparza waived her cat's-paw theory; judicial estoppel prevents her transfer from serving as a basis for her discrimination claim; and her proof fails to show ANM's reasons for her transfer and termination were partially motivated by sex discrimination or pretextual. Having conducted a de novo review,[8] we agree with the last of ANM's arguments and decline to reach its others.[9]

## A.

We first turn to Esparza's sex-discrimination claim. To establish discrimination under the TCHRA, an employee may rely on either direct or circumstantial evidence.[10] Esparza's evidence is circumstantial, so the modified *McDonnell Douglas* burden-shifting analysis applies.[11] Under that analysis, an employee is entitled to a presumption of discrimination if she can

---

*Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) ("Because one purpose of the [TCHRA] is to bring Texas law in line with federal laws addressing discrimination, federal case law may be cited as authority.").

[8] *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) ("We review a summary judgment *de novo*.").

[9] *Barr v. SEC*, 114 F.4th 441, 452 n.6 (5th Cir. 2024) (citing *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) ("[I]f it is not necessary to decide more, it is necessary not to decide more . . . .")).

[10] *Flores*, 612 S.W.3d at 305; *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897–98 (5th Cir. 2002) (describing qualities of direct and circumstantial evidence).

[11] *Flores*, 612 S.W.3d at 305 ("When a plaintiff relies on circumstantial evidence to establish a discrimination claim, we follow the burden-shifting framework the United States Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).").

establish a prima facie case, which is "not onerous."[12] If she makes that showing, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for its conduct.[13] Once the employer produces its reason, the burden returns to the employee to prove the reason false or, "while true, was only one reason for [the employer's] conduct and discrimination is another motivating factor ('mixed motive')."[14] If the employee makes this mixed-motive showing, the employer then must show it would have made the same employment decision regardless of the employee's protected characteristic.[15]

The district court assumed Esparza articulated a prima facie case, and we do as well. In response, ANM has produced a nondiscriminatory reason for Esparza's transfer: Esparza was transferred because of her background in A/V sales and because A/V predominated her sales mix. With that, the burden is now on Esparza to offer sufficient evidence to create a genuine issue of material fact that ANM's reason, while true, was but one of the reasons for its conduct, another of which was sex discrimination.[16] Esparza points to

---

[12] *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). The prima facie case consists of proof the employee "(1) was a member of the protected class, (2) was qualified for the position at issue, (3) suffered a[n] [ ] adverse employment action, and (4) was either (a) replaced by someone outside the protected class or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class.'" *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321–22 (5th Cir. 2021) (quoting *Flores*, 612 S.W.3d at 305) (cleaned up).

[13] *Ross*, 993 F.3d at 321. "As this is a burden of production, the employer need not prove that it was actually motivated by its proffered reason." *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004).

[14] *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015) (quoting *Reed v. Neopost*, 701 F.3d 434, 439–440 (5th Cir. 2012)).

[15] *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011).

[16] *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

three categories of evidence to make this showing: Elliott's remark in her performance evaluation; allegedly disparate treatment of men on the A/V Sales team; and complaints of discrimination by other women at ANM.

We first address Elliott's evaluation, which came months after Mann decided to transfer Esparza and thus borders on the immaterial. Even assuming its materiality doesn't advance Esparza's case, however. We apply the two-part test of *Russell v. McKinney Hospital Venture* to ascertain if a workplace remark suffices to defeat summary judgment.[17] Under *Russell*, an employee must show "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decision-maker."[18] Esparza's evidence fails the second element: None of it shows Elliott was primarily responsible for her transfer to A/V Sales or that he exerted influence or leverage over Mann, the relevant decision-maker.[19] Similarly, there's no evidence that Elliott, acting as a malevolent non-decision maker, did anything motivated by discriminatory animus to cause Esparza's transfer, which precludes her cat's-paw theory.[20] Indeed, Esparza did not contest ANM's proposed undisputed fact in the district court that Mann alone

---

[17] 235 F.3d 219, 226 (5th Cir. 2000). But where an employee "has failed to produce substantial evidence of pretext," *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001), we apply the stricter, four-part test enunciated in *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996). *See Auguster*, 249 F.3d at 405; *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400–01 (5th Cir. 2000). The outcome here is the same under either test.

[18] *Reed*, 701 F.3d at 441.

[19] Esparza offers her testimony that Elliott played an undefined role in transferring her to A/V Sales. Absent corroboration, her testimony is too speculative to defeat summary judgment. *Little*, 37 F.3d at 1075.

[20] *See Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011).

decided to transfer her to A/V Sales, which is incongruous with her newfound theory on appeal.[21]

The record also lacks proof of disparate treatment among Esparza and the comparators she identifies—Chi Babich and Bob Sobata. To prove disparate treatment under the TCHRA, an employee must show she was treated less favorably than others outside her protected class who were similarly situated to her.[22] "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct," in other words, "nearly identical."[23] "[D]ifferent responsibilities, supervisors, capabilities, work rule violations, or disciplinary records" destroy comparability.[24]

Esparza cites testimony from Patricia Barton, a project manager in ANM's Albuquerque office, as proof that Babich and Sobata were similarly situated to Esparza. But Barton testified only that unnamed ANM employees sometimes traveled to, and assisted in, ANM offices different from their own, which isn't probative of Babich's and Sobata's particular circumstances. Esparza identifies nothing else supportive of the TCHRA's

_____

[21] *See Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021) ("[This Court does] not ordinarily consider issues that are forfeited because they are raised for the first time on appeal.").

[22] *Flores*, 612 S.W.3d at 310–11.

[23] *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (footnotes and citations omitted); *see also West v. City of Houston*, 960 F.3d 736, 740 (5th Cir. 2020) (per curiam) ("We have defined 'similarly situated' narrowly, requiring the employees' situations to be 'nearly identical.'" (quoting *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005))). Citing *Ysleta Independent School District v. Monarrez*, Esparza argues the TCHRA's standard for comparators is less stringent than that under federal law, but *Monarrez* does not support her proposition. *Monarrez*, 177 S.W.3d at 917.

[24] *Flores*, 612 S.W.3d at 312 (quoting *AutoZone v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008) (per curiam)).

"nearly identical" standard. What evidence exists in the record militates against a finding of comparability, as well. Babich worked in ANM's Albuquerque office as an "A/V and Cabling Sales Specialist." Because he worked for two units (A/V Sales and Cabling), he reported to a different supervisor than Esparza and had different responsibilities from those of Esparza. Sobata worked out of ANM's Denver office and was not a dedicated salesperson as was Esparza.

Even if there were evidence that Babich and Sobata were similarly situated to Esparza, her evidence of disparate treatment is lacking. Aside from Esparza's own, unsubstantiated testimony, there's no proof that Babich and Sobata were treated better than she. There's no evidence the men failed to meet their sales quotas or received leads that Esparza should have received; nor is there evidence that either poached Esparza's territory or customers, much less at ANM's behest. Esparza's complaint that Babich and Sobata had an extra six months to develop pipelines proves their seniority, not disparate treatment. And Esparza's testimony that she was bound by the customer-engagement model, whereas Babich and Sobata were not, falls short of proving disparate treatment when juxtaposed against her testimony that Duffey disburdened her of the model.

Esparza's final category of evidence—complaints by other women at ANM—doesn't overcome her burden on summary judgment either. Anecdotal complaints by other employees must satisfy the similarly situated test required of comparators.[25] Esparza identifies two complainants who had different roles and different supervisors than she, worked in different departments in different cities, and lodged complaints different from and

---

[25] *Wyvill v. United Cos. Life Ins.*, 212 F.3d 296, 302 (5th Cir. 2000).

temporally remote to hers. Neither can be said to be similarly situated to Esparza, and neither complaint proves pretext.

Having conducted a de novo review of Esparza's summary-judgment evidence, viewed in a light most favorable to her, we conclude she has not raised a legitimate fact issue as to pretext or mixed motive. We therefore AFFIRM summary judgment on her sex-discrimination claim.

## B.

We next consider Esparza's retaliation claim. "To establish a prima facie case of retaliation, an employee must show: (1) she engaged in an activity protected by the TCHRA, (2) she experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action."[26] If the employee proves this prima facie case of retaliation, the burden shifts to the employer merely to "state a nonretaliatory reason for its employment action."[27] The burden then reverts to the employee to prove the reason is pretext for retaliation and that the adverse action would not have occurred "but for" her protected activity.[28] "The but-for causation standard is significantly more difficult to prove than prima facie causation."[29]

The district court assumed Esparza proved a prima facie case of retaliation, and we follow suit. ANM has offered a nonretaliatory reason for Esparza's termination—poor sales performance—so the burden redounds to

_____

[26] *Clark*, 544 S.W.3d at 782.

[27] *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 171 (5th Cir. 2014).

[28] *Apache Corp. v. Davis*, 627 S.W.3d 324, 336 (Tex. 2021) (applying but-for causation to TCHRA retaliation claim); *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487-88 (5th Cir. 2004).

[29] *Clark*, 544 S.W.3d at 782.

Esparza to show that reason is false and that, but for her February 2020 charge of discrimination, ANM wouldn't have dismissed her.

Esparza points to a smattering of record evidence, but none raises even a "shadow of a doubt" as to the truth of ANM's reason for ending Esparza's employment.[30] Her most pertinent evidence involves a comment by Mann eighteen months after her charge of discrimination stating he would fight Esparza's lawsuit and make an example of her. The district court found a reasonable juror could read his statement as a retaliatory threat, but concluded it was too remote in time from Esparza's charge to save her claim.[31]

While Mann's statement may prove a scintilla of retaliatory intent, it's not enough to avoid summary judgment given the undisputed evidence justifying ANM's discharge. There's no dispute, for example, that Esparza's sales in 2020 totaled $19,657 compared to A/V sales of $707,573 the year before; that Esparza's gross wages in 2020 were thrice her sales for the year; that she didn't comply with Duffey's PIP; and that ANM does not abide representatives with exceptionally low sales.[32] On this record, Mann's

---

[30] *E.E.O.C. v. La. Off. of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995) ("Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of a doubt is insufficient."); *see also Brooks v. Lubbock Cnty. Hosp. Dist.*, 373 F. App'x 434, 438 (5th Cir. 2010) (per curiam) ("As [the employee] offers little to no evidence suggesting [the employer's] claim that it terminated [the employee] for performance reasons is false, he cannot demonstrate it was merely a pretext for retaliation.").

[31] The district court applied the *CSC Logic* test to reach this conclusion. *See supra* note 17.

[32] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (holding "a weak issue of fact as to whether the employer's reason was untrue" is insufficient); *Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 584 (5th Cir. 2006) (applying *Reeves*'s "weak inference of fact" rule to retaliation claim); *Montemayor v. City of San Antonio*, 276 F.3d 687, 693 (5th Cir. 2001) ("*Reeves* warns us not to make credibility determinations and

No. 24-50024

comment, made eighteen months after Esparza's charge, is too attenuated to create a triable issue of fact on pretext.

AFFIRMED.

---

weigh the evidence when ruling on Rule 50 motions. However, *Reeves* does not require us to reject the plainly obvious, i.e., the uncontroverted evidence that Montemayor was a 'substandard' cadet."); *Russell*, 235 F.3d at 229 n.19 ("[A]n overwhelming case that the adverse employment actions at issue were attributable to a legitimate, nondiscriminatory reason will not be defeated by remarks that have no link whatsoever to any potentially relevant time frame."); *see also Tex. Tech Univ. Health Scis. Ctr.–El Paso v. Flores*, No. 022-940, 2024 WL 5249446, at *4 & n.6 (Tex. Dec. 31, 2024) (applying *Reeves*'s "weak issue of fact" to pretext analysis under TCHRA).